


**U.S. Department of Justice**

United States Attorney
District of Maryland
Southern Division

| | | |
|---|---|---|
| Paul A. Riley | Mailing Address: | Office Location: | DIRECT: 410-209-4959 |
| Assistant United States Attorney | 36 S. Charles Street, 4th Floor | 86 S. Charles Street, 4th Floor | MAIN: 410-209-4800 |
| Paul.Riley@usdoj.gov | Baltimore, MD 21201 | Baltimore, MD 21201 | |

August 5, 2019

Maggie Grace, Esq.
Deborah Boardman, Esq.
Office of the Federal Public Defender
100 S. Charles Street
Tower II, 9th Floor
Baltimore, MD 21201

      Re:   *United States v. Carl Davis*, Criminal No. GLR-18-0551

Dear Counsel:

      This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, Carl Davis (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by August 9, 2019, it will be deemed withdrawn. The terms of the Agreement are as follows:

<u>Offense(s) of Conviction</u>

      1.    The Defendant agrees to plead guilty to Count 5 of the Indictment, which charges the Defendant with Armed Bank Robbery, in violation of 18 U.S.C. §§ 2113(a), (d). The Defendant admits that the Defendant is, in fact, guilty of the offense and will so advise the Court.

<u>Elements of the Offense(s)</u>

      2.    The elements of the offense(s) to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows: That on or about the time alleged in the Indictment, in the District of Maryland,

<u>Count 5 (Armed Bank Robbery)</u>

      a.  First, the Defendant took money from the presence of another, while that money was in the care or custody of a bank;

      b.  Second, such taking was by force and violence and intimidation;

Rev. August 2018

c. Third, the deposits of the bank were then insured by the FDIC; and

d. Fourth, during the course of the robbery, the Defendant assaulted any person, or put in jeopardy the life of any person by the use of a dangerous weapon or device.

<u>Penalties</u>

3.     The maximum penalties provided by statute for the offense(s) to which the Defendant is pleading guilty are as follows:

| Count | Statute | Minimum Prison | Maximum Prison | Supervised Release | Maximum Fine | Special Assessment |
|-------|---------|----------------|----------------|--------------------|--------------|--------------------|
| 5 | 18 U.S.C. §§ 2113(a), (d) | N/A | 25 years | 5 years | $250,000 | $100 |

a.     Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

b.     Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

c.     Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

d.     Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

e.     Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

f.     Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant

Rev. August 2018

2

agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

## Waiver of Rights

4.     The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

a.     If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b.     If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c.     If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

d.     The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

e.     If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f.     By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

Rev. August 2018

g.     If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

h.     By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

5.     The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

6.     This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein.

## Count 5 (Armed Bank Robbery)

a.     **Offense of Conviction:** The offense of conviction is the bank robbery of a branch of a Farmers & Merchant Bank that occurred on May 8, 2018, as described in the Statement of Facts. This Office and the Defendant agree that the applicable base offense level is 20 pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 2B3.1(a). This Office and the Defendant further agree that there is an increase of 2 levels, pursuant to U.S.S.G. § 2B3.1(b)(1), because the property of a financial institution was taken, and the taking of such property was an object of the offense. This Office and the Defendant further agree that there is an increase of 5 levels, pursuant to U.S.S.G. § 2B3.1(b)(2)(C), because a firearm was brandished. Thus, the offense level for the offense of conviction is 27.

b.     **Relevant Conduct:** The Statement of Facts specifically establishes the commission of ten additional robberies. This Office and the Defendant agree that the guideline calculation for each of those robberies is as follows:

    c. Count One: Pursuant to U.S.S.G. § 2B3.1(a), the base offense level for the offense is 20. There is an increase of 5 levels, pursuant to U.S.S.G. § 2B3.1(b)(2)(C), because a firearm was brandished. Thus, the adjusted offense level is 25.

    d. April 11 Robbery: Pursuant to U.S.S.G. § 2B3.1(a), the base offense level for the offense is 20. There is 2 level increase pursuant to § 2B3.1(b)(2)(F), because a threat of death was made. Thus, the adjusted offense level is 22.

    e. Count Two: Pursuant to U.S.S.G. § 2B3.1(a), the base offense level for the offense is 20. There are no increases. Thus, the adjusted offense level is 20.

    f. Count Three: Pursuant to U.S.S.G. § 2B3.1(a), the base offense level for the offense is 20. There is an increase of 2 levels, pursuant to U.S.S.G. § 2B3.1(b)(1), because the property of a financial institution was taken, and the taking of such property was an object of the offense. There is 2 level increase pursuant to § 2B3.1(b)(2)(F), because a threat of death was made. Thus, the adjusted offense level is 24

    g. Count Four: Pursuant to U.S.S.G. § 2B3.1(a), the base offense level for the offense is 20. There are no increases. Thus, the adjusted offense level is 20.

    h. Count Six: Pursuant to U.S.S.G. § 2B3.1(a), the base offense level for the offense is 20. There is 2 level increase pursuant to § 2B3.1(b)(2)(E), because a dangerous weapon was brandished. Thus, the adjusted offense level is 22.

    i. Count Seven: Pursuant to U.S.S.G. § 2B3.1(a), the base offense level for the offense is 20. There is 2 level increase pursuant to § 2B3.1(b)(2)(E), because a dangerous weapon was brandished. Thus, the adjusted offense level is 22.

    j. Count Eight: Pursuant to U.S.S.G. § 2B3.1(a), the base offense level for the offense is 20. There are no increases. Thus, the adjusted offense level is 20.

    k. Count Nine: Pursuant to U.S.S.G. § 2B3.1(a), the base offense level for the offense is 20. There is 2 level increase pursuant to § 2B3.1(b)(4)(B) because a person was physically restrained to facilitate commission of the offense or to facilitate escape. There is 2 level increase pursuant to § 2B3.1(b)(3)(A) because a victim sustained bodily injury during the commission of the offense. Thus, the adjusted offense level is 24.

    l. Count Ten: Pursuant to U.S.S.G. § 2B3.1(a), the base offense level for the offense is 20. There is an increase of 5 levels, pursuant to U.S.S.G. § 2B3.1(b)(2)(C), because a firearm was brandished. There is an increase of 2 levels, pursuant to U.S.S.G. § 2B3.1(b)(1), because the property of a financial institution was taken, and the taking of such property was an object of the offense. Thus, the adjusted offense level is 27.

    m. **Combined Offense Level:** Pursuant to U.S.S.G. § 3D1.4, counting one (1) Unit for the bank robbery of conviction, four (4) Units for the four additional robberies 1 to 4

levels less serious than the group with the highest offense level, three (3) Units for the six additional robberies 5 to 8 levels less serious than the group with the highest offense level results in a total of eight (8) Units. Thus, the combined offense level is determined by increasing the highest offense level (27) by 8 levels. Thus, the combined offense level is 35.

    n. Acceptance of Responsibility: This Office does not oppose a two level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a), based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one level decrease in recognition of the Defendant's timely notification of the Defendant's intention to enter a plea of guilty. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

    o. Accordingly, the final anticipated offense level is 32.

  7. There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

  8. Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

<u>Rule 11 (c) (1) (C) Plea</u>

  9. The parties stipulate and agree pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that a sentence of **132 months of imprisonment** in the custody of the Bureau of Prisons is the appropriate disposition of this case taking into consideration the nature and circumstances of the offense, the Defendant's criminal history, and all of the other factors set forth in 18 U.S.C. § 3553(a). This Agreement does not affect the Court's discretion to impose any lawful term of supervised release or fine or to set any lawful conditions of probation or supervised release. In the event that the Court rejects this Agreement, except under the circumstances noted below, either party may elect to declare the Agreement null and void. Should the Defendant so elect, the Defendant will be afforded the opportunity to withdraw the Defendant's plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5). The parties agree that if the Court finds that the Defendant engaged in obstructive or unlawful behavior and/or failed to acknowledge personal responsibility as set forth herein, neither the Court nor the Government will be bound by

the specific sentence contained in this Agreement, and the Defendant will not be able to withdraw the Defendant's plea.

### Obligations of the Parties

10.     At the time of sentencing, this Office and the Defendant reserve the right to advocate for a reasonable period of supervised release, and/or fine considering any appropriate factors under 18 U.S.C. § 3553(a). This Office and the Defendant reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office or the Defendant deem relevant to sentencing, including the conduct that is the subject of any counts of the Indictment. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

### Waiver of Appeal

11.     In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

a.      The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s), to the extent that such challenges legally can be waived.

b.      The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows:

i.      The Defendant reserves the right to appeal any sentence that exceeds the statutory maximum; and

ii.     This Office reserves the right to appeal any sentence below a statutory minimum.

c.      The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Forfeiture

12.     The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

a.      Specifically, but without limitation on the Government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in all items that constitute money, property, and/or assets derived from or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities.

b.      The Defendant agrees to consent to the entry of orders of forfeiture for the property described herein and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding forfeiture during the change of plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

c.      The Defendant agrees to assist fully in the forfeiture of the above property. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

d.      The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

## Defendant's Conduct Prior to Sentencing and Breach

13.     Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

14.     If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may

make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

### Restitution

15.     The Defendant agrees to the entry of a restitution order for the full amount of the victims' losses. The Defendant agrees that, pursuant to 18 U.S.C. §§ 3663 and 3663A and 3563(b)(2) and 3583(d), the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation, which the parties stipulate is at least $22,211.00. The total amount of restitution shall be due immediately and shall be ordered to be paid forthwith. Any payment schedule imposed by the Court establishes only a minimum obligation. Defendant will make a good faith effort to pay any restitution. Regardless of Defendant's compliance, any payment schedule does not limit the United States' ability to collect additional amounts from Defendant through all available collection remedies at any time. The Defendant further agrees that the Defendant will fully disclose to this Office, the probation officer, and to the Court, subject to the penalty of perjury, all information (including but not limited to copies of all relevant bank and financial records) regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this Agreement, and this Office may seek to be relieved of its obligations under this Agreement.

### Court Not a Party

16.     The Court is not a party to this Agreement. Subject to Rule 11(c)(1)(C), the sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power to impose a sentence up to the maximum penalty allowed by law. Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

Rev. August 2018

## Entire Agreement

17.     This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Robert K. Hur
United States Attorney

Paul A. Riley
Assistant United States Attorney

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

8-8-19
Date

Carl Davis

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

8/8/19
Date

Maggie Grace, Esq.
Deborah Boardman, Esq.

Rev. August 2018

## ATTACHMENT A

## STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

Carl Davis, age 61, is a resident of Baltimore, Maryland. From April 10, 2018 through June 14, 2018, Davis robbed 11 banks and convenience stores in the District of Maryland. In certain of the robberies he brandished a firearm; in certain others, he brandished an object that looked like a firearm. Each of the robberies is described in further detail below.

### Count One (Hobbs Act Robbery)

On April 10, 2018, Davis entered the Family Dollar store, located at 3901 West Belvedere Ave. Baltimore, Maryland 21215. After standing in line behind other customers, he approached the victim clerk, brandished a silver and black firearm and told the victim to "give it all"—referring to the money in the register. The teller complied and gave Davis $286. Davis then fled on foot.

### Relevant Conduct (Hobbs Act Robbery)

On April 11, Davis entered the Royal Farms store, located at 4007 Sykesville Road Finksburg, Maryland 21048 with another suspect. The suspects said, "Hurry up before we have to shoot someone," but did not display a weapon. Davis walked over to the cash register and took $272 from it. Meanwhile, Davis's accomplice stole 154 packs of cigarettes from behind the store counter, which were worth approximately $1130. Both then fled by car.

### Count Two (Hobbs Act Robbery)

On April 13, 2018, Davis entered the Royal Farms store, located at 10988 Red Run Blvd. Owings Mills, Maryland 21117. He approached the victim clerk, threw a blue drawstring bag at the clerk and demanded money. Specifically, he stated, "Put the fucking money in the bag!" Davis grabbed his waistband, implying that he had a gun; however, no weapon was displayed. The teller complied and gave Davis $147. Davis then fled on foot.

### Count Three (Bank Robbery)

On April 17, 2018, Davis walked into the Bank of America located at 2827 Smith Avenue, Pikesville, MD 21209 and passed the teller a demand note. The note said, "This is a robbery and we do have guns and will use them. $100s $50s in envolopes [sic]. Now [sic] no die [sic] packs." The teller complied and handed over $2,732.00. Davis then fled in a 2001 black Acura.

### Count Four (Hobbs Act Robbery)

On April 28, 2018, Carl Davis entered the Royal Farms store, located at 10988 Red Run Blvd. Owings Mills, Maryland 21117. He approached the victim clerk, threw a blue drawstring bag at the clerk and demanded money. Specifically, he stated, "Put the fucking money in the

bag!" Davis grabbed his waistband, implying that he had a gun; however, he never displayed the weapon. The teller complied, gave Davis $225, and Davis then fled on foot.

## Count Five (Armed Bank Robbery)

On May 8, 2018, Davis robbed the Farmers and Merchant Bank located at 9320 Lakeside Blvd, Owings Mills, Maryland 21117 in Baltimore County. He entered the bank at approximately 2:09 PM, approached the teller, and inquired about opening a bank account.

He was asked for a form of identification, and Davis provided his purported Social Security Number, which was one digit off from his actual Social Security Number. The teller advised Davis that he also needed a valid form of identification to open the account. Davis then left the bank.

Approximately three minutes later, Davis returned to the bank and approached the victim teller again. He brandished what the teller believed was a small black semi-automatic firearm, and mumbled, "I'm not playing around" and "Give me all the money, no marked and no straps." The teller complied and gave him $2,261.00 in U.S. currency from the teller drawer. Davis then fled in a Black Honda car.

## Count Six (Attempted Hobbs Act Robbery)

On June 8, 2018, Davis robbed the Family Dollar store located at located at 3615 E. Northern Parkway Baltimore, Maryland 21206. He entered the store with a black glove on his left hand, walked throughout the store and grabbed a bottle of fabric softener. He approached the clerk, placed the bottle of fabric softener on the counter with this left hand and with his right hand grabbed an object that resembled a black semi-automatic handgun from his waistband. He told the clerk to "open the register." The clerk refused, telling him that she couldn't open it.

Davis then told the clerk and her co-worker that he "didn't want to catch a charge for shooting them" and fled on foot.

## Count Seven (Hobbs Act Robbery)

On June 8, 2018, after robbing the Family Dollar store, Davis robbed the Royal Farms Store # 31, located at 2700 Taylor Avenue Parkville MD 21234. He entered the store and approached the cashier as she was conducting a sales transaction with a customer. The cashier then observed Davis walk behind the counter, place a drink on the counter, and immediately point what she understood to be a gun at her. He stated, "Give me everything in the register."

The cashier immediately complied with the demand and opened the sales register. Davis then used his left gloved hand and removed $173.00 in U.S. currency from the sales register and fled. Davis then fled.

## Count Eight (Hobbs Act Robbery)

On June 10, 2018, the Royal Farms store, located at 3635 Keswick Road Baltimore, Maryland 21211was robbed by three male suspects, including Davis. The suspects entered the store at approximately 2:20 AM, and approached the victim clerk. Davis held a black trash bag and ordered the store clerk to give him cigarettes and money. He also implied that he was armed with a handgun. The suspects proceeded to remove approximately $4200 worth of various tobacco products, including multiple cartons of cigarettes from the store displays, and placed

them into a large trash bags they had brought with them. One of the suspects also removed approximately $120.00 of U.S. currency from the sales register.

As they exited the store, one of the suspects grabbed the victim clerk's cell phone, worth approximately $800. The suspects fled the store and where last observed getting into a dark colored vehicle that was waiting for them at a nearby location.

## Count Nine (Hobbs Act Robbery)

On June 12, 2018, the 7-Eleven store located at 8621 Pleasant Plains Road Towson, Maryland 21286 was robbed by three male suspects, including Davis. The suspects entered the store at approximately 3:20 AM, after a delivery had been made. Davis and another suspect grabbed a store clerk and dragged him into the back room of the store.

The suspects then proceeded to remove approximately $1,300 of various tobacco products that included multiple cartons of cigarettes from the store displays and placed them into a large trash. Prior to exiting the store, one of the suspects (not Davis) ordered the store clerk to go to the sales register and get cash out. The clerk informed him that he could not open the register or the safe. The suspect (not Davis) then punched the victim in the shoulder.

Davis and the other the suspects fled the store with a large quantity of various tobacco products and the store employee's silver Apple iPhone 6S cellular telephone, worth approximately $400.

## Count Ten (Armed Bank Robbery)

On June 14, 2018, Davis robbed the Farmers and Merchant Bank located at 275 Clifton Blvd. Westminster, Maryland 21157 in Carroll County, Maryland. He entered the bank at approximately 12:30 PM and approached a teller. The suspect produced what appeared to be a black semi-automatic handgun and demanded money. The teller complied and gave the suspect $8165.00 in U.S. currency from his drawer. The suspect took the U.S. currency and fled in a black Honda vehicle.

## Execution of Search Warrant And Davis's Confession

On June 29, 2018, law enforcement arrested Davis and executed a search warrant for Davis's residence at 3002 Spaulding Avenue in Baltimore, Maryland. There, they recovered (1) clothing, outerwear, and eyeglasses worn by Davis during a number of the robberies referenced above; and (2) a black replica S & W, M &P 45 semi-automatic .177 caliber air pistol.

On July 2, 2018, law enforcement also executed a search warrant for a black Honda fit that law enforcement observed Davis in on June 29, 2018. In the car, they located a driver's cap and gloves used in the connection with certain of the robberies referenced above.

After being taken into custody on June 29, 2018, Davis voluntarily waived his *Miranda* rights and agreed to speak with investigators. He denied involvement in any bank robberies. Law enforcement charged Davis with the May 8, 2018 and May 18, 2018 Farmers & Merchants bank robberies, and Davis was ultimately detained.

On July 16, 2018, law enforcement charged Davis with the April 17, 2018 Bank of America robbery and the June 8, 2018 Royal Farms store robbery discussed above. On July 19, 2018, law enforcement arrested Davis in connection with these robberies and, after he waived his

*Miranda* rights orally and in writing, Davis spoke to investigators. During the interview, Davis confessed to the following robberies:

- April 17, 2018 – Bank of America (Count 3)
- May 8, 2018 – Farmers and Merchant Bank (Count 5)
- June 8, 2018 – Royal Farms Store (Count 6)
- June 10, 2018 – Royal Farms Store (Count 8)
- June 12, 2018 – 7-Eleven (Count 9)
- June 14, 2018 – Farmers and Merchant Bank (Count 10)

At the time of each of the bank robberies discussed above, the deposits of each of the banks were insured by the Federal Deposit Insurance Corporation. Furthermore, with respect to each of the Hobbs Act robberies or attempted Hobbs Act robberies discussed above, each of the commercial establishments that Davis robbed or attempted were engaged in the retail sale of items in interstate commerce and the business of each entity affected interstate commerce.

SO STIPULATED:

Paul A. Riley
Assistant United States Attorney

Carl Davis
Defendant

Maggie Grace, Esq.
Counsel for Defendant